## S99P0874. McDANIEL v. THE STATE.
(522 SE2d 648)

BENHAM, Chief Justice.

James Ringo McDaniel pled guilty to three counts of malice murder, three counts of felony murder, and armed robbery. After a bench sentencing trial, he was sentenced to death by the trial court for one of the malice murders.[1] Because we conclude that the guilty pleas were involuntary, we reverse the convictions.

1. Evidence presented at the sentencing trial showed that McDaniel lived with his grandparents and ten-year-old brother, the victims in this case. After using crack cocaine, McDaniel took a gun from his grandfather's bedroom and shot each victim once in the head. He then took his grandfather's wallet and left to buy more crack. McDaniel returned home and smoked the crack on the front porch before calling 911 and reporting the crime. When initially questioned, McDaniel claimed he had returned home and found his family murdered. However, in a later audiotaped statement, he admitted killing the victims. He also gave a videotaped statement, and the police were able to recover his grandfather's wallet and ammunition for the gun based on the information he provided. Although McDaniel pled guilty, the evidence presented at the sentencing trial was sufficient to support his convictions. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *DeYoung v. State*, 268 Ga. 780 (1) (493 SE2d 157) (1997). The evidence was also sufficient to support the finding of the existence of the statutory aggravating circumstances beyond a reasonable doubt. Id.; OCGA § 17-10-35 (c) (2).

2. McDaniel contends that his decision to plead guilty was unduly influenced by several improper statements by the trial court during plea negotiations, and that the trial court's involvement rendered his pleas involuntary. The record shows that during the trial, after the preliminary voir dire of the jurors, the trial court called for an in-chambers conference for the purpose of further discussion of the possibility of McDaniel entering a guilty plea and allowing the trial court to pass sentence. The trial court summarized for the

---

[1] The crimes occurred on October 8, 1994. After the initial indictment was quashed, McDaniel was re-indicted in Butts County on November 4, 1996, for malice murder (three counts), felony murder (three counts) and armed robbery. McDaniel pled guilty to all counts on June 9, 1997, and the trial judge imposed the death penalty for one of the malice murders on June 12, 1997. In addition, the judge imposed life without parole for each remaining malice murder conviction and life imprisonment for armed robbery. The felony murder convictions were vacated by operation of law. *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993). McDaniel filed a motion for new trial on July 11, 1997, and an amended motion for new trial and a motion to withdraw the guilty plea on February 5, 1998. The trial court denied the motions on February 4, 1999, and a notice of appeal was filed on March 3, 1999. This case was docketed on March 17, 1999, and orally argued on June 21, 1999.

record its discussion with counsel over the previous weekend:

> I have indicated to [all counsel] that the court would be reluctant as an individual or as a judge to impose a death sentence. My personal philosophy is that if that is done it ought to be done by a jury and not by a judge. Now that's completely my opinion. I'm not saying I'm not committing to that. There was some indication that if the court reversed that decision based on the facts and circumstances the counsel would request an immediate withdrawal but I am not — I am not in a mind to impose a death sentence as an individual. I just think that is something that should be relegated and the duties that a jury should — that's their sworn duty. Of course, I would be the jury and the judge all at the same time. That's the court's feeling and I will listen to both sides, I'll listen about life, I'll listen to life without parole and I'll listen to the recommendation for death but I'm 90 percent certain that I would impose a life without parole sentence.

McDaniel expressed willingness to enter a plea of guilty in exchange for a sentence of life without parole, but the State would only agree to McDaniel pleading guilty, waiving his right to withdraw the plea, and having the judge decide the sentence according to evidence presented in a sentencing trial. The trial court said, "That would be the only procedure the Court would entertain." After a brief private conference with counsel, McDaniel agreed to waive his right to a jury and to have the trial court make the sentencing determination after a sentencing trial.

Despite this concession, the prosecutor was still reluctant to accept a plea agreement because he considered it "very unlikely" that the trial court would impose a death sentence. Only when McDaniel agreed, after further negotiations involving the trial court and the parties, to waive additional rights, including his right to appeal all issues previously raised in motions and his objection to the admission of his statements, did the prosecutor agree to a deal. The proceedings reconvened in the courtroom, at which time McDaniel formally withdrew his plea of not guilty and entered a plea of guilty. After the sentencing trial, the trial court sentenced McDaniel to death for the murder of his younger brother.

Judicial participation in the plea negotiation process is prohibited by court rule in this state and in the federal system. USCR 33.5 (A); F.R.Crim.P. Rule 11 (e) (1). USCR 33.5 (A) provides that "[t]he trial judge should not participate in plea discussions." If the parties negotiate a tentative plea agreement, the trial court may indicate whether it will concur with the agreement, but that review is sepa-

554

rate from the plea negotiation process itself. USCR 33.5 (B). In addition to the restrictions imposed by procedural rules, " '[j]udicial participation in plea negotiations is prohibited as a constitutional matter when it is so great as to render a guilty plea involuntary.' [Cits.]" *Skomer v. State*, 183 Ga. App. 308, 310 (358 SE2d 886) (1987), quoting *United States v. Adams*, 634 F2d 830, 839 (5th Cir. 1981).

A guilty plea must be knowingly and voluntarily entered. *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969); *Goodman v. Davis*, 249 Ga. 11, 13 (287 SE2d 26) (1982); USCR 33.7. Making a knowing and voluntary plea requires an understanding of the nature of the charge, the rights being waived, and the consequences of the plea. *Boykin*, supra at 244; *Goodman*, supra. See also USCR 33.8. Due to the force and majesty of the judiciary, a trial court's participation in the plea negotiation may skew the defendant's decision-making and render the plea involuntary because a defendant may disregard proper considerations and waive rights based solely on the trial court's stated inclination as to sentence. See *Skomer*, 183 Ga. App. at 310.

In this case, McDaniel heard the trial court repeatedly state its reluctance to impose a death sentence and give 90 percent odds on a sentence of life without parole if permitted to impose sentence. That participation by the trial court in the plea negotiation process rendered the resulting guilty plea involuntary. See *Goodman*, supra; *Skomer*, supra; USCR 33.5 (A). Accordingly, we must reverse McDaniel's convictions.

3. Because the convictions are reversed, we need not address the remaining enumerations of error. However, we remind judges in death penalty cases to adequately complete the report required by OCGA § 17-10-35 (a), and to transmit it to this Court as part of the record for review. See Unified Appeal Procedure Rule IV (A) (8).

*Judgment reversed. All the Justices concur.*

DECIDED OCTOBER 18, 1999.

*W. Franklin Freeman, Jr., Michael A. Dillon, Palmer C. Singleton III,* for appellant.

*Tommy K. Floyd, District Attorney, James L. Wright III, Assistant District Attorney, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige Reese Whitaker, Assistant Attorney General,* for appellee.