## S11A0474. STRIPLING v. THE STATE.
### (711 SE2d 665)

MELTON, Justice.

In 1988, Alphonso Stripling was working as a cook trainee at a Kentucky Fried Chicken restaurant in Douglasville. Shortly after the restaurant closed on October 15, 1988, he shot his four co-workers, killing two of them and injuring the other two. He then stole money from the restaurant and fled in an automobile that he stole at gunpoint. He was convicted on two counts each of murder, armed robbery, and aggravated assault and was sentenced to death for each of the murders. This Court affirmed. See *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991). Stripling filed a petition for a writ of habeas corpus, which the habeas court granted as to Stripling's death sentence. On appeal of that decision by the Warden, this Court concluded that the State had suppressed favorable information regarding Stripling's alleged mental retardation and, accordingly, affirmed the habeas court's order directing that Stripling must be retried on the question of his mental retardation and, if he is not found to be mentally retarded, retried as to sentencing. *Head v. Stripling*, 277 Ga. 403 (590 SE2d 122) (2003). Stripling's case is now pending in the trial court, and this Court granted Stripling's application for interim review to consider the following three questions:

Did the trial court err in its order addressing what burden and standard of proof should apply to Stripling's claim that he is mentally retarded?

Did the trial court err regarding the order of opening statements and closing arguments in the mental retardation phase?

Did the trial court err by ruling that it lacked the authority to accept a plea of guilty but mentally retarded?

For the reasons set forth below, we conclude that the trial court erred regarding the burden of proof to be applied to Stripling's claim of mental retardation, that the trial court did not err by ruling that standard criminal procedural rules would apply to Stripling's retrial on the issue of mental retardation, and that the trial court erred by ruling that it lacked the authority to consider any plea bargain that the parties might be willing to enter into.

1. Georgia law provides by statute that a defendant will be exempt from the death penalty if he or she can prove beyond a reasonable doubt that he or she is mentally retarded. See OCGA § 17-7-131 (c) (3) and (j). Stripling moved the trial court to declare the standard of proof applied to mental retardation claims to be unconstitutional. Specifically, Stripling moved the trial court to place the burden on the State to prove that he was *not* mentally retarded. The trial court granted Stripling's motion in part by declaring it unconstitutional to place the burden on defendants to prove their mental retardation beyond a reasonable doubt; however, the trial court also denied Stripling's motion in part by ruling that Stripling would bear the burden to prove his mental retardation by a preponderance of the evidence. In so ruling, the trial court relied on a decision by a three-judge panel of the Eleventh Circuit Court of Appeals,[1] a decision that has since been vacated for rehearing en banc. See *Hill v. Schofield*, 608 F3d 1272 (11th Cir. 2010), vacated and rehearing en banc granted, 625 F3d 1313 (11th Cir. 2010).

We have previously addressed this very issue, and we now reiterate our prior holding that Georgia's beyond a reasonable doubt standard is not unconstitutional. See *Head v. Hill*, 277 Ga. 255, 260-263 (II) (B) (587 SE2d 613) (2003). In addressing this issue previously, we first noted that, although the Supreme Court of the United States had recognized a constitutional right of mentally retarded defendants to be exempt from the death penalty, it had not directed the states to apply any particular burden of proof to claims of mental retardation. See *Atkins v. Virginia*, 536 U. S. 304 (122 SC 2242, 153 LE2d 335) (2002) (identifying a national consensus against

---

[1] We note that the trial court followed the decision of the three-judge panel of the Eleventh Circuit instead of the prior direction by this Court. See *Stripling*, 277 Ga. at 410 (3).

executing mentally retarded persons and holding that executing such persons was therefore unconstitutional). Instead, we noted that the Supreme Court "specifically left ' "to the States the task of developing appropriate ways to enforce the (federal) constitutional restriction" ' on executing the mentally retarded." *Hill*, 277 Ga. at 260 (II) (B) (quoting *Atkins*, 536 U. S. at 317 (III) (citation omitted)). See also *Bobby v. Bies*, 556 U. S. 825, 831 (I) (129 SC 2145, 2150, 173 LE2d 1173) (2009) ("Our opinion [in *Atkins*] did not provide definitive procedural or substantive guides for determining when a person who claims mental retardation 'will be so impaired as to fall (within *Atkins'* compass).' " (quoting *Atkins*, 536 U. S. at 317 (III)); *Ferrell v. Head*, 398 FSupp.2d 1273, 1295 (III) (D) (N.D. Ga. 2005) (finding Georgia's procedure regarding mental retardation to be constitutional under the direction given to the states in *Atkins*), rev'd on other grounds sub nom. *Ferrell v. Hall*, 640 F3d 1199 (11th Cir. 2011). We then took guidance from *Leland v. Oregon*, which approved the application of the beyond a reasonable doubt standard to claims of insanity at the time of defendants' crimes, because claims of mental retardation and claims of insanity "both relieve a guilty person of at least some of the statutory penalty to which he [or she] would otherwise be subject." *Hill*, 277 Ga. at 261 (II) (B) (citing *Leland v. Oregon*, 343 U. S. 790 (72 SC 1002, 96 LE 1302) (1952)). Accord *Ledford v. Head*, 2008 WL 754486, at *3-4 (II) (N.D. Ga. 2008). We rejected the argument that claims of mental retardation were closely analogous to claims of incompetence to stand trial, which a defendant cannot be required to prove by any standard higher than a preponderance of the evidence. *Hill*, 277 Ga. at 261 (II) (B) (distinguishing *Cooper v. Oklahoma*, 517 U. S. 348 (116 SC 1373, 134 LE2d 498) (1996)). In doing so, we noted that "the special risks and limitations" faced by mentally retarded persons during their trial proceedings were "sufficiently counterbalanced by the joint safeguards" of defendants' right to a determination of competency to stand trial under the preponderance of the evidence standard and their right to a determination of mental retardation under the beyond a reasonable doubt standard, and we also noted that Georgia was not alone in placing a burden higher than a preponderance of the evidence on defendants seeking to prove their mental retardation. *Hill*, 277 Ga. at 262 (II) (B). Thus, in light of the specific statement by the Supreme Court that it had not established any particular procedural standards that must be applied to mental retardation, the similarity of mental retardation claims to claims of insanity at the time of the commission of crimes, and the persuasive effect of having sister states who have refused to declare the preponderance of the evidence standard to be constitutionally required, we held that Georgia's beyond a reasonable doubt standard was not unconstitu-

tional from a procedural point of view.

In addition to addressing the question of Georgia's burden of proof from a purely procedural point of view, we also held that Georgia's beyond a reasonable doubt standard further served to *define* the category of mental retardation within Georgia law and that, in doing so, Georgia had not acted outside the bounds of the national consensus about the treatment of mentally retarded persons identified by the Supreme Court in *Atkins*. In *Atkins*, the Supreme Court praised Georgia as being the first state in the nation to have banned the execution of mentally retarded persons, and the Supreme Court made no negative comment about Georgia's heightened standard of proof but, instead, counted Georgia among the states *forming* the national consensus about the treatment of mentally retarded defendants. Furthermore, Georgia was not alone in defining mental retardation through the use of a heightened standard of proof at the time of *Atkins*, as several states by that time had already established that a defendant must prove mental retardation under a clear and convincing evidence standard. See Colo. Rev. Stat. § 18-1.3-1102 (2) (formerly Colo. Rev. Stat. § 16-9-401); Fla. Stat. § 921.137 (4); Ind. Code Ann. § 35-36-9-4 (b); Ariz. Rev. Stat. Ann. § 13-753 (formerly Ariz. Rev. Stat. Ann. § 13-703.02).[2] Nevertheless, these states, despite their heightened standards of proof, were also counted among those states forming the national consensus about the treatment of mentally retarded persons. Finally one state at the time of *Atkins*, Kansas, limited the *definition* of mentally retarded persons by requiring defendants to show that their mental deficiencies directly affected their degrees of criminal culpability, and yet that state was also counted as part of the national consensus about the treatment of mentally retarded persons. See Kan. Stat. Ann. § 21-4623 (e) (2001) (providing that " 'mentally retarded' means having significantly subaverage general intellectual functioning ... to an extent which substantially impairs one's capacity to appreciate the criminality of one's conduct or to conform one's conduct to the requirements of law."). Thus, in light of these varying approaches to defining and setting the standard of proof regarding mental retardation which formed part of the national

---

[2] Soon after *Atkins*, Delaware completed its adoption of the clear and convincing evidence standard for proving mental retardation. Del. Code Ann., tit. 11, § 4209 (d) (3). Also since *Atkins*, the Arizona Supreme Court and the Colorado Supreme Court have upheld their states' standards; however, the Indiana Supreme Court has declared its state's standard unconstitutional. See *Arizona v. Grell*, 135 P3d 696, 701-706 (II) (A) (Ariz. 2006) (applying *Atkins* and holding that requiring a defendant to prove his or her mental retardation by clear and convincing evidence was not unconstitutional); *People v. Vasquez*, 84 P3d 1019 (Colo. 2004) (same). But see *Pruitt v. State*, 834 NE2d 90, 99-103 (I) (A) (Ind. 2005) (holding Indiana's clear and convincing standard to be unconstitutional).

consensus regarding the treatment of mentally retarded defendants, the Supreme Court noted as follows:

> To the extent there is serious disagreement about the execution of mentally retarded offenders, it is in determining which offenders are in fact retarded. . . . Not all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus.

*Atkins*, 536 U. S. at 317 (III). See also *Bies*, 556 U. S. 825, 831 (I) (noting the same). As we noted in *Head v. Hill*, Georgia has defined the category of mentally retarded persons by statute as being "those whose mental deficiencies are significant enough to be provable beyond a reasonable doubt." *Hill*, 277 Ga. at 262 (II) (B). Georgia, among other states with heightened standards for defining and proving mental retardation, was counted by the Supreme Court as being *part of* the national consensus regarding the treatment of mentally retarded defendants, and it seems to us entirely illogical that Georgia could have been part of the consensus dictating a categorical rule and yet somehow simultaneously stand in violation of that same rule. Therefore, we reaffirm that Georgia's statutory definition of mental retardation, with its requirement that only mental deficiencies capable of proof beyond a reasonable doubt, is not unconstitutional under *Atkins*.

2. In response to a request for briefs by the trial court on the subject of the proper procedural rules to be followed in Stripling's mental retardation retrial, the State argued that the mental retardation phase of Stripling's retrial should proceed in the same manner as an ordinary guilt/innocence phase of a death penalty trial. Accordingly, the State argued that, at the mental retardation phase, the State should make the first opening statement, present its evidence first, and then make both the first and last of the closing arguments. Stripling argued that, because the trial court had assigned him the burden to prove his mental retardation, he should be entitled to make the first opening statement, to present his evidence first, and to make the first and last of the closing arguments. The trial court's ruling on this procedural question was mixed, indicating that the State would make the first opening statement, that Stripling would present his evidence first, and that the State would be entitled to make the first and last of the closing arguments. Stripling seeks review of the portions of the trial court's ruling that were unfavorable to him.

We begin by noting the obvious fact that Stripling's retrial is a criminal proceeding. His guilty verdict remains intact at its core

following his habeas proceedings. However, the first jury's verdict of "guilty" involved a rejection of a possible verdict of "guilty but mentally retarded," a rejection which has now been nullified by our decision on habeas corpus. Therefore, Stripling must now undergo further criminal proceedings so that his now-incomplete verdict of "guilty" may be completed, either by the new jury's rejecting his claim of mental retardation or by the new jury's adding "but mentally retarded" to what remains of the original verdict from the guilt/innocence phase. Thus, we find that the trial of Stripling's claim of mental retardation should be regarded as a completion of the guilt/innocence phase of his original trial and, therefore, that the law and rules originally applicable to the guilt/innocence phase should apply.

In applying the law and rules that would have applied at Stripling's original guilt/innocence phase to Stripling's claims on appeal, we note that all of the procedural questions at issue here are interrelated and, therefore, must be analyzed as a whole. As to the opening statement, Uniform Superior Court Rule 10.2 provides, in relevant part, as follows:

> The district attorney may make an opening statement prior to the introduction of evidence. . . . Defense counsel may make an opening statement immediately after the state's opening statement and prior to introduction of evidence, or following the conclusion of the state's presentation of evidence. . . .

As it was entitled to do at Stripling's original guilt/innocence phase, the State is entitled under this rule at Stripling's retrial on mental retardation to make an opening statement before Stripling makes any opening statement and before either party presents any evidence. Furthermore, by allowing the defendant to make an opening statement either immediately after the State makes its opening statement or after "the conclusion of the state's presentation of evidence," the rule clearly contemplates that the State will be entitled to present its evidence before Stripling presents his evidence. We note, however, that the State may decline to present evidence first and, instead, present evidence merely in rebuttal of Stripling's evidence. Stripling may make his opening statement at one of the four following stages: (1) immediately after the State's opening statement, if the State makes one; (2) immediately after the State has waived its opening statement, if the State chooses to waive its opening statement; (3) at the conclusion of the State's case-in-chief, if the State presents one; or (4) after the State has waived its entitlement to present a case-in-chief, if the State chooses to waive

presenting one. Finally, the law applicable to closing arguments clearly indicates that the State is entitled to make an initial closing argument, that Stripling is then entitled to make his closing argument, and that the State is then entitled to make a final closing argument. See OCGA § 17-8-71.

3. Stripling contends that the trial court erred by ruling that it lacked the authority to consider a possible plea because Stripling's original guilt/innocence phase verdict of "guilty" had been left undisturbed by this Court's decision in Stripling's habeas corpus appeal. As we discussed above, Stripling's current trial proceedings are necessary so that his now-incomplete verdict of "guilty" may be completed, either by the new jury's rejecting his claim of mental retardation or by the new jury's adding "but mentally retarded" to what remains of the original verdict. We hold that the completion of that now-incomplete verdict may be done through a plea of guilty but mentally retarded if both parties are willing to do so and if the trial court finds a factual basis to enter judgment on such a plea. See OCGA § 17-7-131 (b) (2) (requiring that a factual basis be found before a plea of guilty but mentally retarded is accepted).

While the trial court may allow for the entry of a plea of guilty but mentally retarded by the defendant, the case would still go forward absent the agreement of the State to a judgment on that plea without a trial. The duty of a trial court is to administer the appropriate *process* by which a dispute between given parties is decided, absent some legal basis for the trial court to summarily resolve or dismiss an active dispute and absent a basis to approve any settlement agreed to by the parties. See *Zigan v. State*, 281 Ga. 415 (638 SE2d 322) (2006) (holding that the State may insist on a jury trial despite the desire of the defendant and the trial court to resolve the case through a bench trial); *McDaniel v. State*, 271 Ga. 552, 552-554 (2) (522 SE2d 648) (1999) (describing the proper role of the trial court in plea negotiations). In a death penalty case, a final conviction of guilty but mentally retarded results in an automatic life sentence. See OCGA § 17-7-131 (j). If judgment on such a plea is objected to by the State, the State cannot be deprived of the opportunity to have its full case adjudicated, just as where a defendant enters a plea of not guilty. We therefore caution the trial court that no part of our decision should be construed as indicating that it has the constitutional power to accept and enter judgment on a plea of guilty but mentally retarded without a trial over the State's objection.

4. We exercise our discretion not to consider the issues that Stripling has raised in addition to the three we ordered addressed. See *Harper v. State*, 283 Ga. 102, 107 (3) (657 SE2d 213) (2008). See also OCGA § 17-10-35.1 (h) ("[T]he failure of the Supreme Court to

grant review . . . shall not waive the right to posttrial review.").

*Judgment affirmed in part and reversed in part. All the Justices concur, except Benham, J., who dissents in part.*

BENHAM, Justice, dissenting in part.

Today Georgia stands alone in severely inhibiting Eighth Amendment protections by applying the most stringent standard available in our system of justice — requiring a capital defendant to prove his or her mental retardation "beyond a reasonable doubt." OCGA § 17-7-131 (c) (3). The execution of mentally retarded offenders was declared unconstitutional by the Supreme Court of the United States under *Atkins v. Virginia*, 536 U. S. 304, 318-321 (122 SC 2242, 153 LE2d 335) (2002) (justifying the categorical prohibition against the execution of mentally retarded offenders on the grounds that the death penalty will not further either the penal goal of retribution or deterrence and because "[m]entally retarded defendants in the aggregate face a special risk of wrongful execution"). In finding such executions constitute "cruel and unusual punishment," the Court recognized a "national consensus" in favor of excluding mentally retarded offenders from the death penalty and expressly directed the States to "develop[ ] appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." Id. at 317 (quoting *Ford v. Wainwright*, 477 U. S. 399, 416-417 (106 SC 2595, 91 LE2d 335) (1986)). Although the Supreme Court did not explicitly distinguish between "appropriate" and inappropriate means to identify mentally retarded offenders, the Court *did* justify the categorical exclusion in part on the inherent difficulties mentally retarded offenders face during a criminal trial. *Atkins*, supra, 536 U. S. at 320-321 ("The risk [of an unwarranted death penalty] is enhanced [because] . . . [m]entally retarded defendants may be less able to give meaningful assistance to their counsel and are typically poor witnesses, and their demeanor may create an unwarranted impression of lack of remorse for their crimes."). Georgia's requirement that mental retardation be proven beyond a reasonable doubt is too rigorous a standard to sufficiently uphold this constitutional protection. In reality, the result of this standard is essentially an insurmountable hurdle for defendants. Its use in criminal trials ignores the justification at the heart of the *Atkins* holding, as mentally retarded offenders may be sentenced to death — despite a vastly disproportionate amount of evidence in their favor — for reasons which may be beyond their control. As stated in the dissent of *Head v. Hill*, which I joined, "Georgia's statute . . . do[es] not prohibit the [S]tate from executing mentally retarded people. To the contrary, the State may still execute people who are in all probability mentally retarded[,] . . . more than likely mentally retarded[,] . . .

[and] even . . . almost certainly mentally retarded." *Head v. Hill*, 277 Ga. 255, 274 (587 SE2d 613) (2003) (4-3 decision). To actively promote this outcome amounts to an unfettered abuse of discretion in violation of the Constitution.

Of the 30 states that impose the death penalty, 22 have adopted a preponderance of the evidence standard for proving mental retardation.[3] Although Georgia led the nation in prohibiting the execution of mentally retarded offenders,[4] it is now the *only* state that imposes a reasonable-doubt standard to prove mental retardation. To be an outlier in this context is not for the greater good. The Supreme Court of the United States voiced its concern regarding the use of a stringent standard of proof for medical and psychiatric factual determinations in *Addington v. Texas*, 441 U. S. 418, 430 (99 SC 1804, 60 LE2d 323) (1979) ("The subtleties and nuances of psychiatric diagnosis render certainties virtually beyond reach in most situations."). The *Addington* Court distinguished between the reasonable-doubt standard's application to "specific, knowable facts" and, in contrast, its application to psychiatric diagnoses, which are "to a large extent based on medical 'impressions' drawn from subjective analysis and filtered through the experience of the diagnostician." Id. Furthermore, the ability to make an accurate factual determination regarding mental retardation may be less concrete in consideration of the different levels of severity involved; a diagnosis of mental retardation can range from "mild" to "profound." See *Diagnostic and Statistical Manual of Mental Disorders* 41 (4th ed. 2000). See also *Atkins*, supra, 536 U. S. at 308-309 (describing the defendant as "mildly mentally retarded," a conclusion based on interviews, school and court records, and IQ test results). Due to the subjective nature of diagnoses, "mild" mental retardation can be much more difficult to detect than "profound" mental retardation, yet *both* ends of the spectrum are to be shielded from capital punishment. Id. at 316 (protecting mentally retarded offenders from cruel and unusual punishment in alignment with the national legislative trend that "society views mentally retarded

---

[3] Alabama, Arkansas, California, Idaho, Indiana, Louisiana, Maryland, Mississippi, Missouri, Nebraska, Nevada, New Mexico, New York, North Carolina, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Utah, Virginia, and Washington require an offender to prove mental retardation by a preponderance of the evidence. Four states – Arizona, Colorado, Florida, and Delaware – require clear and convincing evidence and three states – Connecticut, Kansas, and Kentucky -- have not set a standard of proof for mentally retarded offenders.

[4] With the enactment of OCGA § 17-7-131 (j) in 1988, Georgia was the first state in the nation to ban the execution of mentally retarded defendants. The *Atkins* Court acknowledged Georgia's pioneering in this area in reference to the "national consensus" to prohibit executions of mentally retarded people. *Atkins*, 536 U. S. at 313-316. The Court did not, however, express that Georgia's reasonable-doubt standard would be sufficient to uphold Eighth Amendment protections and the new federal ban resulting from the *Atkins* holding.

offenders as *categorically* less culpable than the average criminal") (emphasis supplied). Setting a standard so high as to require proof beyond a reasonable doubt greatly increases the chance that *any* mentally retarded person will be executed — an outcome absolutely prohibited by the Eighth Amendment. And for what purpose? The social goal of retribution is not served because mentally retarded offenders are "less culpable" than those deserving of the death sentence, and likewise, the goal of deterrence is also not served because crimes carried out by mentally retarded offenders lack the requisite premeditation and deliberation to successfully preclude similar felonious acts. Id. at 319-320. Are we so focused on maximizing the absolute penalty of death that we would risk wrongfully executing someone with a clinically identified mental disability? To do so is an impermissible violation of our Constitution and a senseless assault against morality and human decency. Accordingly, I would join the majority of jurisdictions imposing the death penalty which require a defendant alleging a mental disability to prove his deficiency by a preponderance of the evidence. Therefore, I respectfully dissent to Division 1 of the majority opinion.

DECIDED JUNE 13, 2011.

*David T. Wooten, Gerald P. Word, Mitchell D. Raup, David M. Gossett, Carl J. Summers,* for appellant.

*David McDade, District Attorney, Jeffrey L. Ballew, James A. Dooley, W. Thomas Weathers III, Assistant District Attorneys,* for appellee.

*Samuel S. Olens, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Patricia B. Attaway Burton, Senior Assistant Attorney General, Sabrina D. Graham, Assistant Attorney General,* amici curiae.