304 Ga. 94
FINAL COPY

S17G1270.  WINFREY v. THE STATE.


GRANT, Justice.

Appellant Jimmy Carlton Winfrey pled guilty to six counts of violating

Georgia's Street Gang Terrorism and Prevention Act in connection with a

drive-by shooting of rapper "Lil Wayne's"[1] tour bus on Interstate 75.[2]  Winfrey

now appeals, asserting that the trial judge improperly participated in plea

negotiations in violation of Uniform Superior Court Rule (USCR) 33.5 (A) and

that his plea was involuntary on the basis of that participation.  We agree, and

we therefore reverse Winfrey's convictions.

---

[1] Also known as Lil Weezy, Lil Weasel, Lil Full Clip, Young Weezy, Weezy F. Baby, Weezy F. Crazy, Wizzy Fizzy, Mr. Coach Carter, and Mr. Shoot 'Em Down.  His given name is Dwayne Michael Carter, Jr.

[2] A grand jury returned a 27-count indictment against Winfrey, charging him with multiple violations of the Racketeer Influenced and Corrupt Organizations Act and the Street Gang Terrorism and Prevention Act, aggravated assault, criminal damage to property in the first degree, and possession of a firearm during the commission of a felony.  As part of Winfrey's plea agreement, the State nolle prossed the other 21 counts in exchange for Winfrey's plea of guilty to the six gang counts, and Winfrey received a sentence of ten years to serve incarcerated with a consecutive ten years on probation.

## I.

Winfrey entered his plea during a pre-trial hearing where the status of his plea negotiations was put into the record. The prosecutor advised that the State had made three offers, each of which Winfrey had rejected, and that no additional offers were anticipated. Defense counsel explained that he had discussed the offers with Winfrey "ad nauseam," but Winfrey was hesitant to enter a plea because of the effect Gang Act or RICO convictions might have on his parole eligibility and therefore, he was ready to proceed with his pending motions. The trial judge then stated, in part:

> [T]his opportunity is going away. Go to trial and you get convicted there's not going to be any of me being concerned about when you parole out. I will not be concerned about when you parole out.
>
> I will not be able to impact what count — only a jury can impact what count you get convicted on or don't get convicted on. So that's for your team to figure out.
>
> Whatever they say you're guilty of I'm going to sentence you, and I'm not going to worry about when you get out of jail because it's not my concern.
>
> My concern is you went to trial, you didn't take any responsibility for what you did or did not do. It was proved if you get convicted of what you did do. I'll take that as truth, because a jury said so.
>
> And I would also take into account that you didn't take responsibility for what a jury says you did, and I won't worry about your parole eligibility.
>
> And if you want to look around and see what happens to people in gangs in Cobb County, Georgia you can look at what

happened last week to the guy who went to trial and got convicted and pulled — was it 50 years?

[PROSECUTORS]: One hundred to serve fifty, Judge.

THE COURT:  There you go. These guys tried him.  So I'm not judging them.  That's what she did.

I'm a whole different person.  And you're sitting over in jail listening to everybody shoot their mouths off about this judge and that judge and the other judge.

We all have reputations. My reputation is not that I'm an easy judge. I know it, you know it, the whole community knows it. So if that's what you want to go up against be my guest.

You've got an offer, it's about ready to evaporate. You're not coming back to there unless you convince a jury of people from Cobb County, Georgia you didn't do most of this.

There's such a thing as winning a battle and losing a war. If you think you're so smart and you've got it all figured out, you go to trial, let's say you get acquitted on — how many counts are there, 27?

So let's say you get acquitted on ten and convicted of seventeen. You add it all up it's still a mess of time, and I don't care when you get paroled.

It's not my job, it's not my function.  My job is public safety, and my job is constitutionally a correct trial for everybody, which I will do.

Once that's done, whatever they say you deal with, I'm going to worry about public safety.

So, y'all might want to talk a little bit more, but otherwise we're going to do motions in about ten minutes.

When the proceeding reconvened approximately one hour and twenty minutes later, Winfrey had agreed to what his attorneys have consistently characterized as the State's previous plea offer, and the trial court accepted the plea after thoroughly questioning Winfrey about the voluntariness of his plea

and providing an extensive explanation of his rights and the consequences of entering a plea.[3] Winfrey was sentenced to ten years to serve and a consecutive ten years on probation. Winfrey filed a timely notice of appeal contending that his plea was involuntary because the trial judge improperly participated in plea negotiations in violation of USCR 33.5 (A).

On appeal, the Court of Appeals first considered its own jurisdiction to decide the case, and correctly concluded in the face of a challenge from the State that a direct appeal "is a prescribed means to challenge the guilty plea." *Winfrey v. State*, 340 Ga. App. 344, 345 (795 SE2d 752) (2017) (citation and punctuation omitted). The court went on to explain that "our appellate courts have made equally plain that under these circumstances, our review is limited to only those claims that can be resolved by facts appearing in the record," and that this case met that standard. Id. (citing *Smith v. State*, 287 Ga. 391, 402-403 (697 SE2d 177) (2010)).

---

[3] It is apparent from the record and briefing that there may be a continuing, albeit unrecognized, disagreement between Winfrey and the State regarding the time-to-serve aspect of the last offer preceding the colloquy between Winfrey and the trial court, and we have identified nothing in the record that definitively resolves the question of whether the time to serve was 10 or 20 years. It may well be that, considering all the circumstances in a particular case, substantial improvement in a plea offer following improper participation from the trial court could demonstrate that the defendant's choice to accept the plea was not an involuntary one. We simply do not conclude that this is one of those cases.

Turning to the merits of the appeal, the Court of Appeals concluded that the trial judge "did not improperly interject herself into the negotiation process," but added that it did "not condone" the trial court's comments, which "appear to violate the spirit of USCR 33.5 (A)." *Winfrey*, 340 Ga. App. at 349-350. Nor did the trial court's comments render Winfrey's plea involuntary, according to the Court of Appeals, because "[t]he trial judge never *explicitly* told Winfrey that he would be facing a longer sentence if he rejected the State's offer and went to trial," even though "she strongly suggested that result." Id. (emphasis supplied).

We granted certiorari, posing a single question to the parties: Did the trial court impermissibly participate in Winfrey's plea negotiations? We conclude that the trial court did participate in Winfrey's plea discussions in violation of Rule 33.5 (A)—in spite of the fact that many of the court's comments were implicit rather than explicit in their meaning. We also conclude that the level of the court's participation was so significant that it rendered Winfrey's guilty plea involuntary.

## II.

"The trial judge should not participate in plea discussions." USCR 33.5 (A). In addition to the error inherent in a Rule 33.5 (A) violation, "'(j)udicial

participation in plea negotiations is prohibited *as a constitutional matter* when it is so great as to render a guilty plea involuntary.'" *State v. Hayes*, 301 Ga. 342, 345 (801 SE2d 50) (2017) (quoting *Pride v. Kemp*, 289 Ga. 353, 354 (711 SE2d 653) (2011)) (emphasis supplied); cf. *In the Interest of S. F.*, 312 Ga. App. 671, 673-674 (719 SE2d 558) (2011) (trial court violated Rule 33.5 (A) by inappropriately participating in plea negotiations, but "the court's participation in this case was not so great as to make S.F.'s admission involuntary"). These cases indicate that, in some cases, a trial judge may violate Rule 33.5 (A) without rendering a plea constitutionally involuntary.

This conclusion is consistent with our treatment of other rule violations. See, e.g., *Arnold v. State*, 292 Ga. 95, 97 (734 SE2d 382) (2012) (failure of trial court to follow USCR 33.8 by informing defendant of mandatory minimum sentence did not render guilty plea involuntary); *Smith*, 287 Ga. at 400 (unless defendant can show harm or prejudice from violation of USCR 33.8, requiring judge to inform defendant of potential immigration consequences of guilty plea, defendant is not entitled to withdraw guilty plea); *Adams v. State*, 285 Ga. 744, 747-748 (683 SE2d 586) (2009) (violation of USCR 33.9, requiring factual basis for guilty plea, did not result in manifest injustice invalidating guilty plea); *State v. Wooten*, 273 Ga. 529, 532 (543 SE2d

721) (2001) (violation of USCR 3.1's requirements regarding case assignments neither violated defendant's constitutional rights nor harmed him). Whether the trial judge violated Rule 33.5 (A), therefore, will not always settle cases like this, where the voluntariness of a defendant's plea is the dispositive constitutional issue. Accordingly, we must consider not only whether the trial court impermissibly participated, but also whether that participation was so significant that it led to an involuntary plea.

Several factors have been consistent in this Court's involuntary plea cases involving trial court participation in plea discussions. First, there has been evidence that the trial court threatened the defendant that he would receive a stronger sentence if he were convicted after trial. See, e.g., *Pride*, 289 Ga. at 353-354; cf. *Hayes*, 301 Ga. at 347-348. Here, we agree with the Court of Appeals that although the trial court "never explicitly told Winfrey that he would be facing a longer sentence if he rejected the State's offer and went to trial," the court "strongly suggested that result." *Winfrey*, 340 Ga. App. at 349-350. We disagree, however, that because the trial court's strong suggestion of a harsher sentence was not explicitly stated, the judge "did not improperly interject herself into the negotiation process." Id.

Let us be plain: if a trial judge communicates—either explicitly or implicitly—to a criminal defendant that his sentence *will* be harsher if he rejects a plea deal and is found guilty at trial, then Rule 33.5 (A) has been violated and the plea may be found involuntary. See, e.g., *McDaniel v. State*, 271 Ga. 552, 553 (522 SE2d 648) (1999) (a "trial court's stated *inclination* as to sentence" may "skew the defendant's decision-making") (emphasis supplied); *Cherry v. State*, 240 Ga. App. 41, 44 (522 SE2d 540) (1999) (impermissible participation in plea negotiations although trial judge did not "*expressly* state that [defendant's] sentence would be harsher if he did not plead guilty" because the judge did comment that the recommended sentence was "too lenient" and "*suggest[ed]* that a decision by the defendants to proceed to trial would be unwise") (emphasis supplied). In other words, "[c]omments by the trial judge that *reinforce the unmistakable reality* that a defendant who rejects a plea offer and instead opts to go to trial will likely face a greater sentence" are impermissible. *Gibson v. State*, 281 Ga. App. 607, 609 (636 SE2d 767) (2006) (emphasis supplied).

Several Court of Appeals decisions also demonstrate that trial courts should not communicate to defendants that they had better accept plea offers because convictions after trial would—not could—result in harsher sentences.

In *McCranie v. State*, for example, when the defendant asked the court what sentence would be imposed if he went to trial, the judge responded, "Why don't you try it and let's see." 335 Ga. App. 548, 548 (782 SE2d 453) (2016). Then, shortly afterward, the judge said, "Why don't I make it life?" and later stated, "I'll be glad for you to go to trial because I promise you I'll be your judge." Id. at 549 (punctuation omitted). The Court of Appeals correctly found that the trial court's participation in plea discussions was so great as to render the defendant's plea involuntary and reversed the denial of his motion for an out-of-time appeal. Id.; see also *Cherry*, 240 Ga. App. at 44 (plea involuntary where judge "suggest[ed] that a decision by the defendant[ ] to proceed to trial would be unwise," after previously commenting that plea offer was "too lenient"). Similarly, in *Gibson*, the Court of Appeals reversed the superior court's denial of the defendant's motion to withdraw his guilty plea because, although the trial court appropriately informed the defendant of the maximum sentence, it went further by advising the defendant that the court "would not give him the same sentence considerations in the event that he opted to proceed to trial rather than accept the proposed plea." 281 Ga. App. at 610; see also *Skomer v. State*, 183 Ga. App. 308, 309 (358 SE2d 886) (1987) (withdrawal of guilty pleas appropriate following judge's statement "that while he would

consider giving the appellants probation if they pled guilty, he would not consider giving them probation if they stood trial and were found guilty by a jury").

In *Hayes*, on the other hand, we found no error in the trial court's statement that if the defendant rejected the plea offer, "we are going to have a trial, and you are facing 20 years and you would serve every day of it *if* you are found guilty. *And* that was the sentence imposed by the court." 301 Ga. at 343 (punctuation omitted; emphasis supplied). Instead, we found that "the trial court's careful and repeated use of conditional language" was appropriate where the trial court merely *advised* the defendant of the mandatory sentence he was facing as a recidivist were he convicted at trial. Id. at 347. The trial court's "explanation of the potential maximum sentence was carefully expressed in conditional language, avoiding any positive statement of what sentence might be imposed after a trial." Id. at 348. So the trial court in *Hayes* merely informed the defendant of "the potential maximum sentence" he was facing as a recidivist and "the potential consequences" of his decision, without communicating whether that sentence would likely be imposed. Id. Similarly, in *In the Interest of S. F.*, where the Court of Appeals found a Rule 33.5 (A) violation, it also found that the violation did not render the juvenile defendant's

admission involuntary because in informing the juvenile that he would face the maximum sentence if he rejected the plea offer, the judge did not make any threats of a longer term of confinement if the juvenile chose to go to trial. 312 Ga. App. at 672-674.

The key distinction, then, is whether the trial judge threatens that a sentence *will* be harsher after conviction if a plea offer is rejected, or advises that the sentence *may* be harsher—the former should not occur, and it is of little significance whether the trial court accomplishes that communication with explicit or implicit language. This holding comports with Georgia courts' longstanding and recently reiterated recognition of the difference between "[t]elling a defendant that he *could be* sentenced to *up to*" the maximum statutory sentence and "telling a defendant that he *would be* sentenced to" the statutory maximum if he forgoes a plea and is convicted at trial. *Hayes*, 301 Ga. at 345 (emphasis in original); see also *Skomer*, 183 Ga. App. at 309 (stressing the "enormous difference" between "being reminded by the state that rejection of a plea proposal *may* result in a greater punishment and being told by the trial judge that a rejection of a plea proposal *will* result in greater punishment in the event of a conviction by a jury") (emphasis in original).

The comments in this case crossed the line.  The trial court made repeated statements that referenced the judge's own proclivity to sentence harshly, along with other statements strongly implying that if Winfrey were found guilty by a jury, his sentence would be (not could be) harsher than that recommended in the plea offer.  Specifically, the court told Winfrey, "if you want to look around and see what happens to people in gangs in Cobb County, Georgia you can look at what happened last week to the guy who went to trial and got convicted and pulled . . . [one hundred to serve fifty]. . . . There you go.  These guys tried him."  The court went on to imply that her reputation would mean an even harsher sentence:  "I'm a whole different person. . . . We all have reputations.  My reputation is not that I'm an easy judge.  I know it, you know it, the whole community knows it."

These comments may not have explicitly stated that Winfrey would receive a harsher sentence if convicted after trial, but this monologue was far more than the mere "explanation of the potential maximum sentence . . . carefully expressed in conditional language," that we approved in *Hayes*.  The implication was unmistakable—if Winfrey rejected the plea offer and the jury

found him guilty at trial, he would be sentenced more harshly.[4]  See *Gibson*,

281 Ga. App. at 609 (plea rendered involuntary by trial judge's comments "that

reinforce the unmistakable reality that a defendant who rejects a plea offer and

instead opts to go to trial will likely face a greater sentence").  And even those

comments were not enough.  Instead, the trial court chose to reemphasize the

risks that Winfrey would take by going to trial:  "So if that's what you want to

go up against be my guest."

That brings us to another point.  Expression by a judge of a personal

interest in giving the defendant a heavy sentence is another factor that Georgia

courts have looked to in analyzing involuntary plea cases like this one.  See,

e.g., *Pride*, 289 Ga. at 353-355; *McCranie*, 335 Ga. App. at 548-549.  In *Pride*,

the trial court informed the defendant that if he rejected the plea offer and was

found guilty after a jury trial, then the court "would stack the sentences" and

"give him the maximum." 289 Ga. at 353.  But the court went further by stating

"I am happy to try him . . . and he is going to get a lot more.  I would really

much rather try him, frankly, so I can give him what I would really like to give

him." Id. at 353-354 (punctuation omitted).  We found that the court's repeated

---

[4] As this suggests, a judge cannot immunize impermissible threats to sentence a defendant more harshly simply by couching the threats in conditional language.

statements that it would impose a longer sentence if the defendant went to trial—including statements that the court preferred that he went to trial so that a harsher sentence could be imposed—constituted judicial participation so significant that it rendered the defendant's plea involuntary. Id. at 354-355.

The comments by the trial court in this case were similar in nature to those found inappropriate in *Pride*, in that they intimated a desire to sentence the defendant. And they were shortly followed by the additional statement, "If you think you're so smart and you've got it all figured out, you go to trial." While not quite as direct as the court's comments in *Pride*, the colloquy in this case strongly suggested that the court would hold it against the defendant if he went to trial. Indeed, the judge's statements that if Winfrey wanted to "go up against" her reputation, then "be my guest," and that he should go to trial if he thought he had it all figured out are very similar to the *McCranie* judge's invitation to that defendant, "Why don't you try it and let's see." 335 Ga. App. at 548 (punctuation omitted). Additionally, the trial court knew that parole was a key decision point for Winfrey, and specifically told him that if she were called upon to sentence him after trial, "I don't care when you get paroled."

Also remarkable was the trial court's statement to Winfrey that he would have to "convince a jury of people from Cobb County, Georgia [he] didn't do

most of this," an explanation that shifted the burden of proof from the State to Winfrey. But of course the State bears the burden of proving a defendant's guilt beyond a reasonable doubt, and the burden never shifts to a criminal defendant to present evidence of or to prove his innocence. See *Estelle v. Williams*, 425 U.S. 501, 503 (96 SCt 1691, 48 LE2d 126) (1976); *Sampson v. State*, 282 Ga. 82, 84 (646 SE2d 60) (2007). It is entirely reasonable to believe that this burden discussion further impressed upon Winfrey that he should plead guilty because he would not be treated fairly at trial.

Taken in their entirety, then, the trial court's repeated comments communicated to Winfrey, albeit implicitly, that if he rejected the plea offer and was found guilty by a jury, then he *would*—not merely may or could—receive a harsher sentence. We must conclude in light of these comments that Winfrey's guilty plea was involuntary.

Judgment reversed. All the Justices concur, except Blackwell and Peterson, JJ., who dissent.

BLACKWELL, Justice, dissenting.

As the majority correctly explains, the statements by the trial judge about her propensity to impose especially harsh sentences crossed the line drawn by Uniform Superior Court Rule 33.5 (A), insofar as her statements impliedly threatened Jimmy Carlton Winfrey with a harsher sentence if he went to trial and were found guilty. Judicial commentary of this sort certainly could render a subsequent guilty plea involuntary, but only if it actually induces the accused to enter his plea. The record in this case does not establish that the judicial commentary in question induced Winfrey to enter his plea, and I cannot, therefore, go along with the majority and conclude that his plea was involuntary. I respectfully dissent.

The majority concedes that a violation of Rule 33.5 (A) does not inevitably render a subsequent plea involuntary, and that most certainly is correct. As the United States Supreme Court has explained, improper threats may render a plea involuntary, but only to the extent that the plea is induced by the threats:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must

stand unless *induced* by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

Brady v. United States, 397 U. S. 742, 755 (II) (90 SCt 1463, 25 LE2d 747) (1970) (citation and punctuation omitted; emphasis supplied). See also Machibroda v. United States, 368 U. S. 487, 493 (II) (82 SCt 510, 7 LE2d 473) (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").[5] As the record presently exists, I cannot conclude that the improper comments of the judge, in fact, induced Winfrey to enter his plea.

To be sure, Winfrey entered his plea about an hour-and-a-half after the judge made the improper comments, and that fact is *some* evidence that the plea was induced by the comments. But the record also shows that Winfrey, his counsel, and the prosecuting attorneys had been in plea discussions prior to

---

[5] Cf. Colorado v. Connelly, 479 U. S. 157, 164 (II) (107 SCt 515, 93 LE2d 473) (1986) (with respect to allegedly involuntary confession, holding that, "[a]bsent police conduct *causally related* to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law" (emphasis supplied)); Pulley v. State, 291 Ga. 330, 332 (2) (729 SE2d 338) (2012) ("[T]he voluntariness of a statement does not depend solely upon whether it was made in response to promises . . . . The key inquiry is whether the alleged promise *actually induced* the statement that [the defendant] seeks to suppress." (Citation and punctuation omitted; emphasis supplied)).

the improper comments, and although Winfrey had rejected earlier plea offers, the record indicates that his rejection of those offers was driven in significant part by concerns about parole considerations, concerns that were addressed, at least to some extent, by the negotiated plea that Winfrey finally entered. The precise terms of the earlier offers that Winfrey had rejected are unclear on the existing record, but the record suggests that the plea that he eventually negotiated might have been substantially more favorable than those earlier offers.[6] Winfrey was represented by two seasoned criminal defense lawyers, neither of whom raised any objection when Winfrey entered his plea. At that time, Winfrey represented to the trial court that he was "satisfied with the services of [his] attorneys," and his plea was "made upon [his] own free decision after discussing it with [his] attorneys." Also in his plea colloquy, he confirmed that no one had "made any promise or threat to get [him] to plead guilty," his awareness that it was his decision whether to "plead guilty or not guilty," and his understanding that, if he proceeded to trial, "[he] would be presumed innocent, and have the right to make the State prove [his] guilt

---

[6] The statements of the prosecuting attorney at the plea hearing indicate that the plea eventually negotiated by Winfrey cut the years of incarceration by half from the earlier offers for Winfrey to plead to violations of the Street Gang Terrorism and Prevention Act. The statements of Winfrey's counsel at the same hearing suggest otherwise, and the record is, therefore, ambiguous on this point.

beyond a reasonable doubt as to every essential element of the crime."[7] "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U. S. 63, 74 (II) (97 SCt 1621, 52 LE2d 136) (1977). See also United States v. Stewart, 198 F3d 984, 987 (7th Cir. 1999) ("Entry of a plea is not some empty ceremony, and statements made to a . . . judge in open court are not trifles that defendants may elect to disregard."). These circumstances and representations support the finding of the trial court that the plea was voluntary, and as the record stands now, it shows only a possibility that the plea might have been induced by the improper comments of the judge.

That possibility is reason to afford Winfrey an opportunity to present evidence of actual inducement, notwithstanding that such evidence would contradict his "solemn declarations" in the plea colloquy. See Fontaine v. United States, 411 U. S. 213, 215 (93 SCt 1461, 36 LE2d 169) (1973). But Winfrey filed no motion to withdraw his plea, which would have given him an opportunity to expand the record. Consequently, we are left with uncertainty about whether the plea that he eventually negotiated was substantially more favorable than the offers that he previously had rejected, we know nothing

---

[7] The record also includes a written plea questionnaire, on which Winfrey made similar and consistent representations about the voluntariness of his plea.

about what he discussed with his counsel in the hour-and-a-half between the improper commentary by the judge and the entry of the plea, and we do not have any explanation of the thinking that led Winfrey to enter his plea. For all we know, Winfrey was not influenced in any way by the comments of the judge, his lawyers disabused him of any concerns raised by those comments, he had been predisposed to enter a plea if a sufficiently favorable plea could be negotiated, and the plea that he ultimately negotiated met his preexisting requirements. This incomplete record has convinced the majority that the plea was involuntary.[8] I am not so sure.

I am authorized to state that Justice Peterson joins this dissent.

---

[8] Although the majority says that a Rule 33.5 (A) violation does not always render a subsequent plea involuntary, its analysis and conclusion suggest otherwise. Indeed, if the majority meant what it says, one surely would expect the majority to address voluntariness distinctly before concluding that the plea in this case was involuntary. But instead, the majority says nothing meaningful about inducement (an essential component of a claim that a plea is involuntary), and having found that the judge's commentary violated Rule 33.5 (A), the majority jumps straight to the conclusion that the commentary itself, without more, shows the plea to be involuntary.

Decided June 29, 2018.

Certiorari to the Court of Appeals of Georgia — 340 Ga. App. 344.

Steven H. Sadow; Matthew K. Winchester, for appellant.

D. Victor Reynolds, District Attorney, Michael S. Carlson, John R. Edwards, John S. Melvin, Gregg M. Jacobson, Assistant District Attorneys, for appellee.

Jeffrey Scott, Jeffrey E. Gewirtz, amicus curiae.