Grant, Justice.
**94 Appellant Jimmy Carlton Winfrey pled guilty to six counts of violating Georgia's Street Gang Terrorism Prevention Act in connection with a drive-by shooting of rapper "Lil Wayne's"[1] tour bus on Interstate 75.[2]
*614 Winfrey now appeals, asserting that the trial judge improperly participated in plea negotiations in violation of Uniform Superior Court Rule 33.5 (A) and that his plea was involuntary on the basis of that participation. We agree, and we therefore reverse Winfrey's convictions.
I.
Winfrey entered his plea during a pre-trial hearing where the status of his plea negotiations was put into the record. The prosecutor advised that the State had made three offers, each of which Winfrey **95 had rejected, and that no additional offers were anticipated. Defense counsel explained that he had discussed the offers with Winfrey "ad nauseam," but Winfrey was hesitant to enter a plea because of the effect Gang Act or RICO convictions might have on his parole eligibility and therefore, he was ready to proceed with his pending motions. The trial judge then stated, in part:
[T]his opportunity is going away. Go to trial and you get convicted there's not going to be any of me being concerned about when you parole out. I will not be concerned about when you parole out.
I will not be able to impact what count-only a jury can impact what count you get convicted on or don't get convicted on. So that's for your team to figure out.
Whatever they say you're guilty of I'm going to sentence you, and I'm not going to worry about when you get out of jail because it's not my concern.
My concern is you went to trial, you didn't take any responsibility for what you did or did not do. It was proved if you get convicted of what you did do. I'll take that as truth, because a jury said so.
And I would also take into account that you didn't take responsibility for what a jury says you did, and I won't worry about your parole eligibility.
And if you want to look around and see what happens to people in gangs in Cobb County, Georgia you can look at what happened last week to the guy who went to trial and got convicted and pulled-was it 50 years?
[Prosecutors]: One hundred to serve fifty, Judge.
The Court: There you go. These guys tried him. So I'm not judging them. That's what she did.
I'm a whole different person. And you're sitting over in jail listening to everybody shoot their mouths off about this judge and that judge and the other judge.
We all have reputations. My reputation is not that I'm an easy judge. I know it, you know it, the whole community knows it. So if that's what you want to go up against be my guest.
You've got an offer, it's about ready to evaporate. You're not coming back to there unless you convince a jury of people from Cobb County, Georgia you didn't do most of this.
There's such a thing as winning a battle and losing a war. If you think you're so smart and you've got it all figured **96 out, you go to trial, let's say you get acquitted on-how many counts are there, 27?
So let's say you get acquitted on ten and convicted of seventeen. You add it all up it's still a mess of time, and I don't care when you get paroled.
It's not my job, it's not my function. My job is public safety, and my job is constitutionally a correct trial for everybody, which I will do.
Once that's done, whatever they say you deal with, I'm going to worry about public safety.
So, y'all might want to talk a little bit more, but otherwise we're going to do motions in about ten minutes.
When the proceeding reconvened approximately one hour and twenty minutes later, Winfrey had agreed to what his attorneys have consistently characterized as the State's previous plea offer, and the trial court accepted *615 the plea after thoroughly questioning Winfrey about the voluntariness of his plea and providing an extensive explanation of his rights and the consequences of entering a plea.[3] Winfrey was sentenced to 10 years to serve and a consecutive 10 years on probation. Winfrey filed a timely notice of appeal contending that his plea was involuntary because the trial judge improperly participated in plea negotiations in violation of Uniform Superior Court Rule 33.5 (A).
On appeal, the Court of Appeals first considered its own jurisdiction to decide the case, and correctly concluded in the face of a challenge from the State that a direct appeal "is a prescribed way to challenge the guilty plea." Winfrey v. State , 340 Ga. App. 344, 345, 795 S.E.2d 752 (2017) (internal citation and punctuation omitted). The court went on to explain that "our appellate courts have made it equally plain that under these circumstances our review is limited to only those claims that can be resolved by facts appearing in the record," and that this case met that standard. Id. (citing Smith v. State , 287 Ga. 391, 402-403, 697 S.E.2d 177 (2010) ).
Turning to the merits of the appeal, the Court of Appeals concluded that the trial judge "did not improperly interject herself into the negotiation process," but added that it did "not condone" the trial **97 court's comments, which "appear to violate the spirit of USCR 33.5 (A)." Id. at 349-350, 795 S.E.2d 752. Nor did the trial court's comments render Winfrey's plea involuntary, according to the Court of Appeals, because "[t]he trial judge never explicitly told Winfrey that he would be facing a longer sentence if he rejected the State's offer and went to trial," even though "she strongly suggested that result." Id. (emphasis supplied).
We granted certiorari, posing a single question to the parties: Did the trial court impermissibly participate in Winfrey's plea negotiations? We conclude that the trial court did participate in Winfrey's plea discussions in violation of Rule 33.5 (A) -in spite of the fact that many of the court's comments were implicit rather than explicit in their meaning. We also conclude that the level of the court's participation was so significant that it rendered Winfrey's guilty plea involuntary.
II.
"The trial judge should not participate in plea discussions." Uniform Superior Court Rule 33.5 (A). In addition to the error inherent in a Rule 33.5 (A) violation, " '[j]udicial participation in plea negotiations is prohibited as a constitutional matter when it is so great as to render a guilty plea involuntary." State v. Hayes , 301 Ga. 342, 345, 801 S.E.2d 50 (2017) (quoting Pride v. Kemp , 289 Ga. 353, 354, 711 S.E.2d 653 (2011) ) (emphasis supplied); cf. In re S.F. , 312 Ga. App. 671, 673-674, 719 S.E.2d 558 (2011) (trial court violated Rule 33.5 (A) by inappropriately participating in plea negotiations, but "the court's participation in this case was not so great as to make S.F.'s admission involuntary."). These cases indicate that, in some cases, a trial judge may violate Rule 33.5 (A) without rendering a plea constitutionally involuntary.
This conclusion is consistent with our treatment of other rule violations. See, e.g., Arnold v. State , 292 Ga. 95, 97, 734 S.E.2d 382 (2012) (failure of trial court to follow USCR 33.8 by informing defendant of mandatory minimum sentence did not render guilty plea involuntary); Smith , 287 Ga. at 400, 697 S.E.2d 177 (unless defendant can show harm or prejudice from violation of USCR 33.8, requiring judge to inform defendant of potential immigration consequences of guilty plea, defendant is not entitled to withdraw guilty plea); Adams v. State , 285 Ga. 744, 747-748, 683 S.E.2d 586 (2009) (violation of USCR 33.9, requiring factual basis for *616 guilty plea, did not result in manifest injustice invalidating guilty plea); State v. Wooten , 273 Ga. 529, 532, 543 S.E.2d 721 (2001) (violation of USCR 3.1's requirements regarding case assignments neither violated defendant's constitutional **98 rights nor harmed him). Whether the trial judge violated Rule 33.5 (A), therefore, will not always settle cases like this, where the voluntariness of a defendant's plea is the dispositive constitutional issue. Accordingly, we must consider not only whether the trial court impermissibly participated, but also whether that participation was so significant that it led to an involuntary plea.
Several factors have been consistent in this Court's involuntary-plea cases involving trial court participation in plea discussions. First, there has been evidence that the trial court threatened the defendant that he would receive a stronger sentence if he were convicted after trial. See, e.g., Pride , 289 Ga. at 353-354, 711 S.E.2d 653 ; cf. Hayes , 301 Ga. at 347-348, 801 S.E.2d 50. Here, we agree with the Court of Appeals that although the trial court "never explicitly told Winfrey that he would be facing a longer sentence if he rejected the State's offer and went to trial," the court "strongly suggested that result." Winfrey , 340 Ga. App. at 349-350, 795 S.E.2d 752. We disagree, however, that because the trial court's strong suggestion of a harsher sentence was not explicitly stated, the judge "did not improperly interject herself into the negotiation process." Id.
Let us be plain: if a trial judge communicates-either explicitly or implicitly-to a criminal defendant that his sentence will be harsher if he rejects a plea deal and is found guilty at trial, then Rule 33.5 (A) has been violated and the plea may be found involuntary. See, e.g., McDaniel v. State , 271 Ga. 552, 553, 522 S.E.2d 648 (1999) (a "trial court's stated inclination as to sentence" may "skew the defendant's decision-making") (emphasis added); Cherry v. State , 240 Ga. App. 41, 43, 522 S.E.2d 540 (1999) (impermissible participation in plea negotiations although trial judge did not "expressly state that [defendant's] sentence would be harsher if he did not plead guilty" because the judge did comment that the recommended sentence was "too lenient" and "suggest [ed ] that a decision by the defendants to proceed to trial would be unwise") (emphasis added). In other words, "[c]omments by the trial judge that reinforce the unmistakable reality that a defendant who rejects a plea offer and instead opts to go to trial will likely face a greater sentence" are impermissible. Gibson v. State , 281 Ga. App. 607, 609, 636 S.E.2d 767 (2006) (emphasis added).
Several Court of Appeals decisions also demonstrate that trial courts should not communicate to defendants that they had better accept plea offers because convictions after trial would-not could-result in harsher sentences. In McCranie v. State , for example, when the defendant asked the court what sentence would be imposed if he went to trial, the judge responded, "Why don't you try it and let's see." 335 Ga. App. 548, 548, 782 S.E.2d 453 (2016). Then, shortly afterward, **99 the judge said, "Why don't I make it life?" and later stated, "I'll be glad for you to go to trial because I promise you I'll be your judge." Id. at 549, 782 S.E.2d 453. The Court of Appeals correctly found that the trial court's participation in plea discussions was so great as to render the defendant's plea involuntary and reversed the denial of his motion for an out-of-time appeal. Id. ; see also Cherry , 240 Ga. App. at 43, 522 S.E.2d 540 (plea involuntary where judge "suggest[ed] that a decision by the defendant[ ] to proceed to trial would be unwise," after previously commenting that plea offer was "too lenient"). Similarly, in Gibson , the Court of Appeals reversed the superior court's denial of the defendant's motion to withdraw his guilty plea because, although the trial court appropriately informed the defendant of the maximum sentence, it went further by advising the defendant that the court "would not give him the same sentence considerations in the event that he opted to proceed to trial rather than accept the proposed plea." 281 Ga. App. at 610, 636 S.E.2d 767 ; see also Skomer v. State , 183 Ga. App. 308, 309, 358 S.E.2d 886 (1987) (withdrawal of guilty pleas appropriate following judge's statement "that while he would consider giving the appellants probation if they pled guilty, he would not consider giving them probation if they stood trial and were found guilty by a jury"). *617 In Hayes , on the other hand, we found no error in the trial court's statement that if the defendant rejected the plea offer, "we are going to have a trial, and you are facing 20 years and you would serve every day of it if you are found guilty. And that was the sentence imposed by the court." 301 Ga. at 343, 801 S.E.2d 50. (emphasis added). Instead, we found that "the trial court's careful and repeated use of conditional language" was appropriate where the trial court merely advised the defendant of the mandatory sentence he was facing as a recidivist were he convicted at trial. Id. at 347, 801 S.E.2d 50. The trial court's "explanation of the potential maximum sentence was carefully expressed in conditional language, avoiding any positive statement of what sentence might be imposed after a trial." Id. at 347-348, 801 S.E.2d 50. So the trial court in Hayes merely informed the defendant of "the potential maximum sentence" he was facing as a recidivist and "the potential consequences" of his decision, without communicating whether that sentence would likely be imposed. Id. at 348, 801 S.E.2d 50. Similarly, in In re S.F. , where the Court of Appeals found a Rule 33.5 (A) violation, it also found that the violation did not render the juvenile defendant's admission involuntary because in informing the juvenile that he would face the maximum sentence if he rejected the plea offer, the judge did not make any threats of a longer term of confinement if the juvenile chose to go to trial. 312 Ga. App. at 672-674, 719 S.E.2d 558.
The key distinction, then, is whether the trial judge threatens that a sentence will be harsher after conviction if a plea offer is **100 rejected, or advises that the sentence may be harsher-the former should not occur, and it is of little significance whether the trial court accomplishes that communication with explicit or implicit language. This holding comports with Georgia courts' longstanding and recently reiterated recognition of the difference between "[t]elling a defendant that he could be sentenced up to " the maximum statutory sentence and "telling a defendant that he would be sentenced to" the statutory maximum if he forgoes a plea and is convicted at trial. Hayes , 301 Ga. at 345, 801 S.E.2d 50 (emphasis in original); see also Skomer , 183 Ga. App. at 309, 358 S.E.2d 886 (stressing the "enormous difference" between "being reminded by the state that rejection of a plea proposal may result in a greater punishment and being told by the trial judge that a rejection of a plea proposal will result in greater punishment in the event of a conviction by a jury") (emphasis in original).
The comments in this case crossed the line. The trial court made repeated statements that referenced the judge's own proclivity to sentence harshly, along with other statements strongly implying that if Winfrey were found guilty by a jury, his sentence would be (not could be) harsher than that recommended in the plea offer. Specifically, the court told Winfrey, "if you want to look around and see what happens to people in gangs in Cobb County, Georgia you can look at what happened last week to the guy who went to trial and got convicted and pulled ... [one hundred to serve fifty] ... There you go. These guys tried him." The court went on to imply that her reputation would mean an even harsher sentence: "I'm a whole different person. ... We all have reputations. My reputation is not that I'm an easy judge. I know it, you know it, the whole community knows it."
These comments may not have explicitly stated that Winfrey would receive a harsher sentence if convicted after trial, but this monologue was far more than the mere "explanation of the potential maximum sentence ... carefully expressed in conditional language," that we approved in Hayes . The implication was unmistakable-if Winfrey rejected the plea offer and the jury found him guilty at trial, he would be sentenced more harshly.[4] See Gibson , 281 Ga. App. at 609, 636 S.E.2d 767 (plea rendered involuntary by trial judge's comments "that reinforce the unmistakable reality that a defendant who rejects a plea offer and instead opts to go to trial will likely face a greater sentence"). And even those comments were not enough. Instead, the trial court chose to reemphasize *618 the risks that Winfrey would take by going to trial: "So if that's what you want to go up against be my guest." **101 That brings us to another point. Expression by a judge of a personal interest in giving the defendant a heavy sentence is another factor that Georgia courts have looked to in analyzing involuntary plea cases like this one. See, e.g., Pride , 289 Ga. at 353-355, 711 S.E.2d 653 ; McCranie , 335 Ga. App. at 548-549, 782 S.E.2d 453. In Pride , the trial court informed the defendant that if he rejected the plea offer and was found guilty after a jury trial, then the court "would stack the sentences" and "give him the maximum." 289 Ga. at 353, 711 S.E.2d 653. But the court went further by stating "I am happy to try him ... and he is going to get a lot more. I would really much rather try him, frankly, so I can give him what I would really like to give him." Id. at 353-354, 711 S.E.2d 653. We found that the court's repeated statements that it would impose a longer sentence if the defendant went to trial-including statements that the court preferred that he went to trial so that a harsher sentence could be imposed-constituted judicial participation so significant that it rendered the defendant's plea involuntary. Id. at 354-355, 711 S.E.2d 653.
The comments by the trial court in this case were similar in nature to those found inappropriate in Pride , in that they intimated a desire to sentence the defendant. And they were shortly followed by the additional statement, "If you think you're so smart and you've got it all figured out, you go to trial." While not quite as direct as the court's comments in Pride , the colloquy in this case strongly suggested that the court would hold it against the defendant if he went to trial. Indeed, the judge's statements that if Winfrey wanted to "go up against" her reputation, then "be my guest," and that he should go to trial if he thought he had it all figured out are very similar to the McCranie judge's invitation to that defendant, "Why don't you try it and let's see." 335 Ga. App. at 548, 782 S.E.2d 453. Additionally, the trial court knew that parole was a key decision point for Winfrey, and specifically told him that if she were called upon to sentence him after trial, "I don't care when you get paroled."
Also remarkable was the trial court's statement to Winfrey that he would have to "convince a jury of people from Cobb County, Georgia [he] didn't do most of this," an explanation that shifted the burden of proof from the State to Winfrey. But of course the State bears the burden of proving a defendant's guilt beyond a reasonable doubt, and the burden never shifts to a criminal defendant to present evidence of or to prove his innocence. See Estelle v. Williams , 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) ; Sampson v. State , 282 Ga. 82, 84, 646 S.E.2d 60 (2007). It is entirely reasonable to believe that this burden discussion further impressed upon Winfrey that he should plead guilty because he would not be treated fairly at trial.
**102 Taken in their entirety, then, the trial court's repeated comments communicated to Winfrey, albeit implicitly, that if he rejected the plea offer and was found guilty by a jury, then he would -not merely may or could-receive a harsher sentence. We must conclude in light of these comments that Winfrey's guilty plea was involuntary.
Judgment reversed.
All the Justices concur, except Blackwell and Peterson, J.J., who dissent.

Also known as Lil Weezy, Lil Weasel, Lil Full Clip, Young Weezy, Weezy F. Baby, Weezy F. Crazy, Wizzy Fizzy, Mr. Coach Carter, and Mr. Shoot 'Em Down. His given name is Dwayne Michael Carter, Jr.

A grand jury returned a 27-count indictment against Winfrey, charging him with multiple violations of the Racketeer Influenced and Corrupt Organizations Act and the Street Gang Terrorism Prevention Act, aggravated assault, criminal damage to property in the first degree, and possession of a firearm during the commission of a felony. As part of Winfrey's plea agreement, the State nolle prossed the other 21 counts in exchange for Winfrey's plea of guilty to the six gang counts, and Winfrey received a sentence of 10 years to serve incarcerated with a consecutive 10 years on probation.

It is apparent from the record and briefing that there may be a continuing, albeit unrecognized, disagreement between Winfrey and the State regarding the time-to-serve aspect of the last offer preceding the colloquy between Winfrey and the trial court, and we have identified nothing in the record that definitively resolves the question of whether the time to serve was 10 or 20 years. It may well be that, considering all the circumstances in a particular case, substantial improvement in a plea offer following improper participation from the trial court could demonstrate that the defendant's choice to accept the plea was not an involuntary one. We simply do not conclude that this is one of those cases.

As this suggests, a judge cannot immunize impermissible threats to sentence a defendant more harshly simply by couching the threats in conditional language.