**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**July 1, 2020**

# In the Court of Appeals of Georgia

A20A0246. THE STATE v. RHODES.

GOBEIL, Judge.

A Cobb County jury found David Elijah Rhodes guilty of two counts of aggravated child molestation, and the trial court sentenced him to concurrent 25-year terms of imprisonment, followed by life on probation. Rhodes timely filed a motion for a new trial, and argued among other things that "the jury reached a verdict against the weight of the evidence." After holding a hearing and considering the parties' legal briefs, the trial court granted the motion for new trial under the standards set forth in OCGA §§ 5-5-20 and 5-5-21. The State then appealed, see OCGA §§ 5-7-1 (a) (8); 5-7-2 (c), arguing that the trial court abused its discretion in granting the new trial. For the reasons set forth below, including our standard of review, we affirm.

The evidence at trial showed the following.[1] One weekend in October 2012, Rhodes's mother was caring for her relative's three children, including U. B., who was nine years old at the time. Rhodes, who was then 16 years old, resided in his mother's home on the weekend in question. At trial, the State presented the testimony of U. B., who stated that after eating breakfast one morning, Rhodes asked U. B. if he wanted a lollipop, and U. B. said yes. Then, Rhodes used his thumbs to cover U. B.'s eyes and put his "thing" in U. B.'s mouth. U. B. did not see Rhodes's penis, but he testified that the object Rhodes put in his mouth "felt weird and slimy." U. B. vomited, and Rhodes told him to go upstairs if he needed to throw up again and to use the toilet. Rhodes instructed U. B. to take a shower, and then told U. B. "to bend over and look at the wall. . . . And [Rhodes] stuck his thing in [U. B.'s] behind."

U. B. disclosed the incidents to his uncle and mother, and his mother took him to the hospital on October 23, 2012. The physical examination did not reveal tearing to U. B.'s anal region. Medical personnel performed a sexual assault kit on U. B., and

---

[1] "Because we are not reviewing a defendant's conviction on direct appeal, we do not review the evidence in the light most favorable to the jury's verdicts under the familiar standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2871, 61 LE2d 560) (1979)." *State v. Hamilton*, 306 Ga. 678, 678 (1) n. 1 (832 SE2d 836) (2019). We do not reach the issue of whether the evidence was sufficient to support Rhodes's convictions, and we express no opinion on this issue.

Rhodes provided buccal swabs to law enforcement. The GBI report analyzing the sexual assault kit failed to reveal the presence of sperm in either U. B.'s mouth or anus.

Rhodes did not testify at trial, but the investigator who interviewed Rhodes on November 27, 2012, testified, and the interview was played for the jury. During the interview, Rhodes denied U. B.'s accusations. At trial, the investigator testified that Rhodes did not display deceptive characteristics during the interview and that "he appeared to try to be genuine."

Rhodes was charged[2] by indictment for one count of aggravated child molestation based on performing an act of sodomy on U. B., "to wit: an act involving the penis of [Rhodes] and the anus of [U. B.];" one count of aggravated child molestation based on performing an act of sodomy on U. B., "to wit: an act involving the penis of [Rhodes] and the mouth of [U. B.];" and one count of enticing a child for indecent purposes. The jury returned a verdict finding Rhodes not guilty of enticing a child for indecent purposes, but guilty of two counts of aggravated child molestation. The trial court sentenced Rhodes to concurrent 25-year terms of imprisonment, followed by life on probation.

---

[2] Rhodes, who was 16 years old at the time, was charged as an adult.

In his motion for a new trial, Rhodes asserted that the verdict was against the weight of the evidence. Following a hearing, the trial court, "after considering the credibility of witnesses, conflicts in the evidence, and the weight of the evidence," agreed that the verdict was "contrary to the evidence and contrary to the principles of justice and equity[]" and granted a new trial on this basis. This appeal followed.

In its sole claim of error, the State asserts that the trial court erred in granting Rhodes's motion for a new trial on the general grounds. In support of this assertion, the State points to comments the trial court made prior to trial and at sentencing, which the State contends "reveal the judge's distress over the sentence required upon a guilty verdict[.]" Ultimately, we find no abuse of discretion and hence affirm the grant of a new trial.

"In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury." OCGA § 5-5-20. In addition, "[t]he presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." OCGA § 5-5-21. These grounds are "commonly known as the 'general grounds' for new trial[.]" *State v.*

4

*Holmes*, 306 Ga. 647, 649 n. 1 (832 SE2d 777) (2019) (citation and punctuation omitted).

> When properly raised in a timely motion, . . . the "general grounds" [ ] require the trial judge to exercise a broad discretion to sit as a "thirteenth juror." In exercising that discretion, the trial judge must consider some of the things that [he] cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence. Although the discretion of a trial judge to award a new trial on the general grounds is not boundless — it is, after all, a discretion that should be exercised with caution and invoked only in exceptional cases in which the evidence preponderates heavily against the verdict — it nevertheless is, generally speaking, a substantial discretion.

*White v. State*, 293 Ga. 523, 524-525 (2) (753 SE2d 115) (2013) (citations and punctuation omitted). Finally, we are constrained to apply the clear statutory mandate that "[t]he first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge." OCGA § 5-5-50.

In the case subjudice, just prior to the start of trial, Rhodes's trial counsel and the State negotiated a plea agreement of eight years to be served in confinement,

followed by lifetime on probation in exchange for Rhodes's guilty plea to one count of aggravated child molestation. As the State began reciting the factual basis for the plea, the court noted for the record that Rhodes appeared to mouth: "I can't do this." In an effort to convey the gravity of the sentence should he be found guilty,[3] the trial court informed Rhodes that, "if you're found guilty, I will have to give you twenty-five years in prison . . . and you'll serve every single day of it." After the court inquired further, Rhodes stated: "I just can't admit to something that I honestly didn't do." Rhodes rejected the plea offer, and the case proceeded to trial.

Immediately after the verdict, the trial court moved on to sentencing. Noting its lack of discretion in the sentence, the trial court confirmed with the State that it was not seeking consecutive sentences, and sentenced Rhodes to concurrent 25-year terms of imprisonment, followed by life on probation, as well as adherence to the requirements of the sex offender registry. At the conclusion of sentencing, the trial court wished Rhodes "[g]ood luck."

---

[3] Under OCGA § 16-6-4 (d) (1), "a person convicted of the offense of aggravated child molestation shall be punished by imprisonment for life or by a split sentence that is a term of imprisonment for not less than 25 years . . . followed by probation for life[.]"

The State implores this Court to "look beyond the [t]rial [c]ourt's use of words in granting the new trial and determine that there was a different reason for granting the new trial[:] [ ] the [t]rial [c]ourt's dissatisfaction with the mandated sentence the [c]ourt imposed upon Rhodes." We agree that dissatisfaction with the mandatory sentence is not a proper basis for granting a new trial. However, while the record may reflect the trial court's concern with the length of the sentence, it does not establish that the length of the sentence was the trial court's only concern, or that this concern factored into the court's award of a new trial. In fact, in its order granting the new trial, the court did not discuss the length of the sentence, or mention any concern about Rhodes's relatively young age at the time the offenses were alleged to have occurred. Rather, the court's order states:

> Upon review of the record and the arguments of counsel, and after considering the credibility of witnesses, conflicts in the evidence, and the weight of the evidence, this [c]ourt finds the verdict in this case contrary to the evidence and contrary to the principles of justice and equity.

> Therefore, IT IS HEREBY ORDERED that in order to correct an unfair and unjust verdict, and to accomplish justice, [Rhodes's] Motion for New Trial is GRANTED on the general grounds.

7

Nothing in this order indicates that the trial court failed to "perform[] its duty to exercise its discretion and weigh the evidence in its consideration of the general grounds." *White*, 293 Ga. at 525 (2) (citation and punctuation omitted). The court did not state the incorrect standard in its order, and the record does not support the conclusion that the court was unaware of its responsibility. See *Holmes*, 306 Ga. at 652 (2) (appellate courts will presume, absent record evidence to the contrary, "that the trial court understood the nature of its discretion and exercised it[]") (citation and punctuation omitted). The court clearly recognized that, in its discretion, it could grant a new trial under the authority of OCGA §§ 5-5-20 and 5-5-21, and chose to do so. Importantly, "[t]he law does not require a trial court to provide findings regarding the factors it considered in exercising its discretion as the thirteenth juror, so long as it is clear that the trial court applied the correct standard and exercised its discretion under OCGA §§ 5-5-20 and 5-5-21." *State v. Denson*, 306 Ga. 795, 799 (2) (a) (833 SE2d 510) (2019).

Having reviewed the entire record, and considering that the trial court was authorized, as the thirteenth juror, to credit Rhodes's version of events as recounted in his police interview, and to discount versions offered by other witnesses, and bearing in mind the deferential standard of review set forth in OCGA § 5-5-50, we

8

cannot say that the trial court abused its substantial discretion in granting Rhodes a new trial on the general grounds. *Hamilton*, 306 Ga. 678, 685-687 (2) (a) - (d) (832 SE2d 836) (2019); *Holmes*, 306 Ga. at 653 (3).

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur*.

# In the Court of Appeals of Georgia

A20A0246. THE STATE v. RHODES.

PIPKIN, Judge, concurring fully and specially.

While I am constrained by our extremely deferential standard of review set out in OCGA § 5-5-50 to concur fully with the result reached by the majority in this case, I write separately to express my concern that trial courts remain mindful that the authority to grant a new trial under OCGA §§ 5-5-20 and 5-5-21 is not unbounded. And clearly, concerns over sentencing play no role in the exercise of discretion under those sections.

Further, it is the responsibility and within the discretion of the prosecuting attorney, and only the prosecuting attorney, to decide what charges should be brought

against the alleged perpetrator of a crime, and the trial court has absolutely no role in that initial charging process. Although the trial court's concern in this case appears to be with the mandated minimum sentence, it is the function of the legislative, not the judicial, branch of government to decide the range of punishments for crimes committed in this state and what discretion, if any, trial courts have in imposing those punishments. A trial court is not authorized to ignore or circumvent those legislative prerogatives based on dissatisfaction with the sentencing options.

Lastly, our law is clear that a "trial judge should not participate in plea discussions." *Winfrey v. State*, 304 Ga. 94, 97 (II) (816 SE2d 613) (2018). Although the trial court did nothing wrong by informing Rhodes of the sentence he was facing if convicted, the trial court came perilously close to overstepping that line by repeatedly imploring the State to offer something less than 25 years and then imploring Rhodes to accept the State's offer. Although ultimately Rhodes decided not to plead guilty, and no harm came from the trial court's comments, I would respectfully urge well-intentioned trial courts to exercise restraint when engaging in discussions about the status of plea negotiations.