316 Ga. 633
FINAL COPY

S23A0253.  PUGH v. THE STATE.

MᴄMɪʟʟɪᴀɴ, Justice.

Appellant Philip Pugh entered a plea of guilty but mentally ill to malice murder in connection with the shooting death of Vincent Newsome.[1] On appeal, Pugh claims that the trial court erred in denying his motion to withdraw his guilty but mentally ill plea for three reasons. Pugh first argues that the trial court should have sua sponte conducted a competency hearing at the time of his guilty plea and that the failure to do so violated his procedural due process rights. Pugh next argues that his substantive due process rights were violated by the trial court's acceptance of the plea because Pugh was not competent to enter the plea and did not enter the plea voluntarily. Lastly, Pugh argues that he received constitutionally

---

[1] Newsome was killed on March 1, 2014, and on June 11, 2014, a Gwinnett County grand jury indicted Pugh for malice murder, felony murder based on aggravated assault, aggravated assault of Newsome, aggravated assault of Steve Carcana (a bystander who was struck by a bullet fragment), and two counts of possession of a firearm or knife during the commission of a felony.

ineffective assistance of counsel in that plea counsel failed to request a competency hearing. As explained below, we need not resolve Pugh's claims regarding his competency at the time of his guilty plea hearing, because, given Pugh's repeated assertions at the time of the plea that he was being threatened and forced into entering the plea, the State has failed to meet its burden to show that his plea was knowing and voluntary. We therefore must reverse Pugh's conviction and remand the case for further proceedings.

1.    In presenting its factual basis for the guilty plea, the State proffered the following. On February 26, 2014, the Gwinnett County Police Department received a report that Loraine Rowzie — Pugh's wife — had been the victim of a gang rape at a hotel five or six months prior. It was not reported until her husband, Pugh, said he saw a cell phone video of the gang rape. Pugh called the police later that same day to identify one of the men in the video as "Vince."

On March 1, 2014, Pugh drove from his home in Mississippi to the hotel in Gwinnett County and asked for a man named Tyson Henderson, the previous manager of the hotel, but Henderson was

2

not there. Pugh subsequently encountered and shot Newsome several times, killing him, before driving back to Mississippi where he was later arrested.

The record shows that, following the indictment, initial trial counsel raised a concern about Pugh's mental state and history and requested a mental evaluation. Dr. Tomina Schwenke evaluated Pugh's criminal responsibility and competency to stand trial and on August 24, 2014, submitted her evaluations to the trial court. Dr. Schwenke opined that "Pugh was able to distinguish those behaviors that would be deemed wrong from those that are right at the time of the alleged offenses. Additionally, there is no evidence to suggest that [Pugh] was suffering from a delusional compulsion at the time of the offenses alleged." Dr. Schwenke also found that "at the time of the evaluation, [ ] Pugh was competent to stand trial."

Then, in July 2016, Pugh's plea counsel[2] moved for another mental health examination because he did not agree with Dr.

---

[2] After initial counsel, Pugh had a series of four or five different attorneys leading up to the plea.

3

Schwenke's evaluation that Pugh was competent to stand trial, and the trial court ordered that another evaluation be performed. The evaluator tried once to go to the jail, but Pugh refused to cooperate and fired his counsel over the phone. Then, Pugh said he wanted his counsel back and that he would submit to an evaluation. So his counsel and the evaluator went to the jail, but Pugh again refused to cooperate and was unable to be evaluated.

On April 17, 2017, the case was set to go to trial, but after additional negotiation with the State and conversations with plea counsel on the morning of the scheduled trial, Pugh pleaded guilty but mentally ill. During the plea colloquy, Pugh responded "yes" when asked if anyone had used any "force, threats, or promises" causing him to plead guilty against his will. The trial court asked if Pugh had experienced force, threats, or promises, and Pugh responded that "[i]t was threats." When the trial court asked who made the threats, Pugh responded, "Gwinnett County Police." The trial court asked if police officers were making Pugh plead guilty that day, and Pugh said that they "withheld evidence in my case and

4

then they threatened — they actually threatened to kill my family if I didn't — if I — if I don't keep quiet." The trial court then asked if Pugh wanted to go forward with the plea. Pugh responded, "I have no choice." Both Pugh's plea counsel and the trial court told Pugh that he did have the choice of whether to go to trial. When asked if Pugh committed the offense of murder of Newsome, Pugh responded that he defended himself after Newsome tried to throw him over a balcony. When asked if his decision to plead guilty was being made freely and voluntarily, Pugh responded, "[U]nder the circumstances, yes." The district attorney then explained that "[y]our choices today are plead guilty or have a trial. Which one do you want today?" Pugh said, "I have no choice but to plead guilty, sir. Everything — all my evidence and everything is missing. I have no choice but to plead."

The trial court subsequently followed up on the State's questions about feeling threatened and asked, "Do you feel threatened or are you just feeling the pressure?" Pugh responded, "I feel threatened. They have threatened me about this and they [ ] gave [an] address to my sister — to my sister's — threatened to go

5

shoot up the house and everything, so I — ." When the trial court asked whom Pugh was referring to, Pugh responded, "Some of the Gwinnett County police deputies." Then, the trial court asked whether anyone threatened Pugh "this morning" to enter this plea, and he responded no. The trial court asked no further questions about Pugh's statements that he had been threatened to enter the plea. Pugh further said that he understood the purpose and significance of the proceedings, his rights, and that he was waiving his right to have a trial.

During the plea colloquy, the State represented that there was no evidence of threats by Gwinnett County police officers and that despite Pugh's consistent belief that his wife was raped by multiple men, the State's investigation found no evidence that a rape occurred. But, related to competency, the State explained at the guilty plea hearing:

> Respectfully, I would suggest it's an open question of whether or not the rape even occurred, but if it did, it happened at least six months prior to the actual murder. So if we were to have a trial, we believe the evidence would show this defendant was under some sort of

delusion about the rape.

And I'll tell you, Judge, I listened to that audio of his accounting of what happened 50 times and it is so very compelling. I firmly believe this defendant, in his heart, knows that his wife was raped and it was that knowledge that drove him to revenge and drove him to murder Vincent Newsome.

At the end of the guilty plea hearing, the trial court accepted the plea of guilty but mentally ill and sentenced Pugh to serve life in prison with the possibility of parole. In doing so, the trial court noted:

[T]he Court finds that Mr. Pugh is entering his plea today with an understanding of what's happening in the courtroom. He's had an opportunity to speak to his attorney at length this morning and at other times while he's been in the courthouse. Therefore, the Court finds that Mr. Pugh is entering his plea today freely, voluntarily, and intelligently. That will be the sentence of the court.

Shortly after pleading guilty but mentally ill, Pugh wrote a letter to the trial court trying to withdraw the plea. The trial court appointed appellate counsel, and on May 12, 2017, appellate counsel moved to withdraw the plea. On March 28, 2018, the trial court held a hearing on the motion to withdraw the plea, during which Pugh

7

said he was scared of his plea counsel because his counsel knew the man who raped his wife. Pugh also said that he had a "fear of death" because "people at the Gwinnett Sheriff's Department threatened his family." During this hearing, appellate counsel became concerned about Pugh's behavior and requested time to file written argument. The trial court granted the motion, and on April 17, 2019, appellate counsel submitted an amended motion to withdraw plea. Another hearing was held on May 15, 2019, in which appellate counsel requested a post-conviction competency evaluation, which the trial court ordered.

Dr. Amy Gambow conducted an evaluation in December 2019. The evaluation found that Pugh "appeared guarded and disclosed delusional and paranoid thought content . . . consistent with reports he made to Gwinnett County Detention Center staff, Defense Counsel, and during Court transcripts." She further found that Pugh "did not appear to appreciate his current condition and appeared unable to work with an attorney at this time," "discussed delusional thought content related to his case," and was unlikely to

be able to assist in his defense. As such, it was her opinion that Pugh was not competent at that time to stand trial and that he was not competent at the time he entered his plea

> based on Court transcripts of [ ] Pugh expressing delusional beliefs related to his case, which likely significantly impaired his appreciation of his condition at the time he entered his plea. His delusional and paranoid thought content at the time likely impacted his abilities to make rational decisions and formulate his defense appropriately.

After Dr. Gambow conducted her evaluation, a final hearing on the motion to withdraw guilty plea was held on April 25, 2022, in which both plea counsel and Dr. Gambow testified. On September 21, 2022, the trial court[3] denied Pugh's motion. After considering the entire record, the plea hearing transcript, and applicable law, the trial court found that there was sufficient evidence to show that Pugh was competent and voluntarily entered his plea. As such, the trial court found that Pugh's procedural due process rights were not violated by the trial court's failure to order an additional competency

---

[3] In 2019, Pugh's case was reassigned to a new judge.

hearing sua sponte at the time of the entry of the guilty plea. The trial court also determined that, because Pugh was competent at the time of the plea hearing, his substantive due process rights were not violated. Finally, on Pugh's ineffective assistance of counsel claim, the trial court found no prejudice because Pugh failed to show that, had his plea counsel requested another competency hearing, it would have produced a different result.

2.    Pugh argues that the trial court erred in denying his motion to withdraw his guilty plea because he was not competent at the time he entered his plea and he did not enter the plea voluntarily.

The standard for reviewing a denial of a motion to withdraw a guilty plea is well established. "After sentencing, a defendant may withdraw his guilty plea only to correct a manifest injustice." *Hood v. State*, 315 Ga. 809, 812 (1) (884 SE2d 901) (2023).

> The test for manifest injustice will by necessity vary from case to case, but it has been said that withdrawal is necessary to correct a manifest injustice if, for instance, a defendant is denied effective assistance of counsel, or the guilty plea was entered involuntarily or without an

10

understanding of the nature of the charges.

Id. (citation and punctuation omitted). Among other things, before a defendant can plead guilty, he must be found competent to stand trial and "a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary." *Godinez v. Moran*, 509 U.S. 389, 400 (II) (B) (113 SCt 2680, 125 LE2d 321) (1993). The State bears the burden on a motion to withdraw a guilty plea to establish that the plea was entered knowingly and voluntarily and "may meet this burden by showing on the record of the guilty plea hearing that the defendant was cognizant of all the rights he was waiving and the possible consequences of his plea, or by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary." *DeToma v. State*, 296 Ga. 90, 91 (1) (765 SE2d 596) (2014) (citations and punctuation omitted).

Pretermitting whether Pugh was competent when he entered the guilty plea, the State has failed to meet its burden in proving that the guilty plea was entered knowingly and voluntarily. Pugh stated affirmatively on the record multiple times that the police

11

"actually threatened to kill my family if I didn't — if I — if I don't keep quiet" and that the police "threatened me about this and they [ ] gave [an] address to my sister — to my sister's — threatened to go shoot up the house and everything." Although the trial court and the State asked Pugh to clarify several times whether Pugh felt that he was threatened or was merely feeling pressure to enter the guilty plea, Pugh never recanted his assertions that he was entering the plea because he had been threatened.[4]

Because the record at the plea hearing does not affirmatively disclose that Pugh entered his plea knowingly and voluntarily, we reverse the denial of the motion for withdrawal of the guilty plea and remand for further proceedings.[5] See *Brady v. United States*, 397 U.S. 742, 747-48 (I), n.4 (90 SCt 1463, 25 LE2d 747) (1970) ("The

[4] We recognize the unusual circumstances of this case in which Pugh's claims of being threatened appear to have been unfounded, and Dr. Gambow opined that those claims were delusions. However, it is the State's burden to show that Pugh knowingly and voluntarily entered the guilty plea despite Pugh's asserted belief that he had been threatened, which the State has failed to do.

[5] Because we reverse the denial of Pugh's motion to withdraw his guilty plea, we need not consider Pugh's other claims with respect to this plea. See *Moon v. State*, 312 Ga. 31, 50 (3) (860 SE2d 519) (2021) (declining to address enumerations of error that are not likely to recur on remand).

12

requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized. . . . The new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily."); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (89 SCt 1709, 23 LE2d 274) (1969) (reversing the Supreme Court of Alabama because the record did not "disclose that the defendant voluntarily and understandingly entered his pleas of guilty" and explaining that "coercion, terror, inducements, [or] subtle or blatant threats might be the perfect cover-up of unconstitutionality"); *Winfrey v. State*, 304 Ga. 94, 97 (I) (816 SE2d 613) (2018) (holding that trial court's participation in the plea was so significant and implicitly threatening to the defendant that it rendered his plea involuntary); Uniform Superior Court Rule 33.7 ("The judge shall not accept a plea of guilty or nolo contendere without first determining, on the record, that the plea is voluntary.").

*Judgment reversed and case remanded. All the Justices concur.*

Decided June 21, 2023.

Murder. Gwinnett Superior Court. Before Judge Fluker.

*Angela B. Dillon*, for appellant.

*Patsy Austin-Gatson, District Attorney, Clifford L. Kurlander, Brandon M. Delfunt, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.